# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4060-17T3
 A-4061-17T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

M.A.W. and W.W.,

     Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF G.V.W.,

     a Minor.

_____

        Submitted May 15, 2019 - Decided June 4, 2019

        Before Judges Accurso, Vernoia and Moynihan.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Camden County,
        Docket No. FG-04-0120-18.

        Joseph E. Krakora, Public Defender, attorney for

appellant M.A.W. (Eric R. Foley, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant W.W. (Sigrid Sletteland Franzblau, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Juliana L. Stiles, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (James Joseph Gross, Designated Counsel, on the brief).

PER CURIAM

In these consolidated cases, defendants M.A.W. (Mary) and W.W. (Warren) appeal from a final judgment terminating their parental rights to their fourth child, G.V.W. (Gina), removed from their care at birth and now three years old.[1] Mary contends the Division of Child Protection and Permanency failed to prove the four prongs of the best interests standard of N.J.S.A. 30:4C-15.1(a)(1) to (4) by clear and convincing evidence. Warren argues the Division failed to prove the first three prongs of that test. The Law Guardian joins with the Division in urging we affirm the judgment as to both parents.

---

[1] These names are fictitious and employed to protect the child's privacy.

Having considered defendants' arguments in light of the record and controlling law, we affirm the termination of their parental rights to Gina.

Defendants have an almost ten-year history with the Division, a great deal of which is recounted in our 2014 opinion affirming the termination of their rights as to their three older children. See N.J. Div. of Child Protection & Permanency v. M.W. and W.W., Nos. A-4056-12 and A-4067-12 (App. Div. July 7, 2014) (slip op.). Warren is now fifty-two and Mary thirty-four years old. The couple met over thirteen years ago when both were patients at a psychiatric hospital. Id. at 4. Warren had been admitted to the hospital after a suicide attempt and auditory hallucinations. Ibid. He suffered from bipolar disorder and a long-standing addiction to drugs, including crack cocaine. Ibid. Mary was admitted after stabbing her brother. Ibid. Both have extended criminal histories, Warren having been convicted of burglary, criminal sexual contact, criminal trespass, and writing bad checks, among other things; and Mary of terroristic threats, aggravated assault and resisting arrest. Id. at 3.

As fully set forth in Judge Axelrad's comprehensive oral opinion in this case, Gina was born to defendants in April 2016. The Division effected an emergency removal three days later, following a report from the hospital of concern for Mary's mental health, as well as her hygiene, her demands to hold

3

the baby while under anesthesia, and her overfeeding the newborn. The hospital assigned Mary a twenty-four-hour aide and barred Warren from visiting after security had to escort him out after a violent outburst. A hair follicle sample Warren provided several days later tested positive for cocaine. The Division placed Gina with the resource parents who had adopted her three older siblings.

For the next two years, the Division offered defendants a myriad of services, including supervised visitation, individual therapy, couples counseling, rent assistance, in-home services for Mary through the Division and substance abuse treatment for Warren. The court three times rejected the Division's permanency plan of termination of parental rights followed by adoption in favor of permitting Mary and Warren more time to overcome the problems preventing them from providing Gina a safe home. When defendants made progress, leading the court to order limited unsupervised visitation contingent on them both providing negative urine screens, they refused the tests. A hair follicle test of Warren the following week was positive for cocaine.

Defendants failed to complete services and never overcame their entrenched pattern of domestic disputes leading to weekly visits from the

A-4060-17T3

police. Indeed, at the guardianship trial, an officer from the Gloucester Township Police Department testified his department had received 162 calls involving the couple from December 2016 through early 2018. Besides calls from neighbors reporting the couple fighting, Mary called the police, sometimes several times a week, complaining Warren was mistreating her and using drugs, as well as that he threw a shoe at her, refused to return her keys, took her phone charger and refused to turn down the volume of the television. One Division caseworker testified to the many calls Mary made to the Division hotline disguising her voice and claiming to be Warren, "admitting" drug use and demanding Gina's return. Another caseworker testified the hostility Warren exhibited when the Division removed Gina was "the most intense" she had ever encountered in the hundreds of removals she had conducted.

The Division's expert psychologist, Dr. Jeffrey, testified about her findings following psychological evaluations of Mary and Warren and the bonding evaluations she conducted. Dr. Jeffrey testified Mary suffered from a parent-child relational problem, specific learning disability, borderline intellectual functioning, severe and chronic adjustment disorder, personality disorder with mixed personality features, as well as dependent, narcissistic and

A-4060-17T3

anti-social personality features. She concluded Mary would not be able to provide Gina a minimal level of safe parenting.

As to Warren, Dr. Jeffrey noted he acknowledged his bipolar disorder and history of alcohol and drug problems. Dr. Jeffrey diagnosed him as suffering from parent-child relational problems, relationship distress with spouse, bipolar disorder, adjustment disorder, severe and chronic educational problems, self-regulation problems, alcohol use disorder, substance use disorder, and a mixed personality disorder with narcissistic and dependent personality disorder features. Based on the testing she conducted, Dr. Jeffrey determined it was "unlikely that [Warren] views himself as needing to change." She testified Warren was not capable of a minimal degree of safe parenting and that Gina would be at risk in his care.

Dr. Jeffrey also opined that Mary and Warren "[t]ogether . . . do not compensate for the deficits in each of them," finding their volatile relationship "even more problematic" for Gina. She found that as a couple, they demonstrated a "level of impairment where there is not a functioning partnership" and opined the absence of basic skills necessary to resolve the serious conflicts regularly occurring between them placed Gina at a risk of harm in their care.

A-4060-17T3

Dr. Jeffrey testified Gina displayed an insecure attachment to Mary and Warren in the bonding evaluation she conducted, and that Gina would not be at risk for harm if her relationship with them were severed. Dr. Jeffrey testified Gina displayed a secure attachment to both resource parents, and that she would be at risk of severe and enduring harm if separated from them, which Mary and Warren could not mitigate. Dr. Jeffrey also emphasized Gina's need for permanency because children her age have not "developed the skills to cope with radical dislocation of their world."

Neither Mary nor Warren testified or called any witnesses to testify on their behalf.

After hearing the testimony, Judge Axelrad delivered a comprehensive opinion from the bench. The judge found placing Gina with Mary and Warren would expose her to a risk of harm, which neither was prepared to abate. The judge found Mary, despite years of interventions, did not know how to address Gina's needs or place those needs above her own owing to her emotional immaturity. She found Warren's "long-standing drug history" and refusal to parent independent of Mary, despite her obvious instability, demonstrated an unwillingness to put Gina's needs ahead of his own. The judge further found the couple's "dysfunctional interactions raise serious questions about their lack

7

of personal insight and poor parenting judgment."  She concluded that delaying permanent placement for Gina will add to the harm she has already suffered and that removing her from her resource parents and siblings "would cause serious and enduring emotional and psychological harm to the child."

Judge Axelrad had no difficulty finding the Division provided defendants a litany of services geared to allowing them to parent Gina.  The court noted the Division attempted to explore alternatives but were advised repeatedly by defendants that there were no relatives or friends who could serve and identified several they would not want caring for Gina.  Judge Axelrad concluded that placing Gina with her resource parents and siblings was in her best interests.  The judge concluded Gina was securely attached to the couple, whom she looked to as her psychological parents, and was "thriving" in their care.

Our review of a trial court's decision to terminate parental rights is limited.  N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012).  We generally "defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record."  N.J. Div. of Youth & Family Servs.

A-4060-17T3

v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)).

Having reviewed this record, we are convinced that Judge Axelrad's findings are amply supported by the trial testimony. Defendants never managed to be able to provide Gina with a safe and stable home at any point after she was removed from their care shortly after her birth. "A parent's withdrawal of that solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999).

Defendants' arguments that they never harmed Gina, that they were making progress with services, and that the trial focused largely on their long history with the Division and not on their current efforts, are belied by the record. The record painstakingly documented by Judge Axelrad reveals the Division provided defendants ample services, that defendants failed to avail themselves fully of those services and that their progress was limited, at best. When defendants were offered unsupervised time with Gina contingent on passing a drug screen, they refused the test. In sum, neither Mary nor Warren took the steps necessary to enable them to serve as minimally functional parents to Gina.

A-4060-17T3

We are satisfied the record supports the judge's findings that returning Gina to defendants would expose her to a risk of harm that neither was prepared to abate, that delaying permanent placement would only add to that harm and that termination of their parental rights will not do more harm than good. We affirm the judgment substantially for the reasons expressed by Judge Axelrad in her comprehensive opinion from the bench on April 19, 2018.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4060-17T3